UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RONALD E. RICHARDS,

      Plaintiff,

v.            Case No. 16-cv-1453-pp

SGT. MICHAEL GUTHO,

      Defendant.

**DECISION AND ORDER GRANTING THE DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 21) AND DISMISSING THE CASE**

I. <u>Background</u>

The plaintiff, a Wisconsin state prisoner who is representing himself, filed a civil rights complaint under 42 U.S.C. §1983, alleging that his constitutional rights were violated at the Kettle Moraine Correctional Institution. Dkt. No. 1. On December 19, 2016, the court screened the complaint and allowed the plaintiff to proceed on a claim that the defendant violated his First Amendment rights when he interfered with the plaintiff's personal, non-legal, non-privileged mail. Dkt. No. 8 at 5. The court explained that prison staff may read non-privileged mail on a "spot check" basis to screen for contraband or escape plans, but that any other conduct involving the mail must be reasonably related to a legitimate prison interest. <u>Id.</u> at 4-5. The court concluded that the plaintiff stated a claim when he alleged that the defendant opened a letter addressed to the defendant and told other inmates about its content, despite

1

the fact that someone in the prison mailroom already had inspected the letter and placed a seal on it; the court concluded that the plaintiff had raised a question as to whether the defendant had a legitimate penological reason to open, read or share the contents of the letter. Id. at 5.

II.   Defendant's Motion for Judgment on the Pleadings

   A.   *Timeliness*

The defendant answered the complaint on February 17, 2017. Dkt. No. 12. As of that date, the pleadings in the case were closed.

On April 7, 2017, the court issued a scheduling order. Dkt. No. 16. That order required the parties to complete all discovery by July 7, 2017, and to file dispositive motions by August 7, 2017. Id. The court did not set dates for a final pretrial conference or a trial.

On August 7, 2017—the date dispositive motions were due—the defendant filed this motion for judgment on the pleadings. Dkt. No. 21. Federal Rule of Civil Procedure 12(c), the rule that allows a party to file a motion for judgment on the pleadings, says that the moving party may file the motion "[a]fter the pleadings are close—but early enough not to delay trial."

The defendant filed his motion for judgment on the pleadings after the pleadings closed (on February 17, 2017), but early enough not to delay trial, because there is no trial date. The motion was timely filed.

The plaintiff argues, however, that the court should treat the defendant's motion as a motion for summary judgment. He cites Fed. R. Civ. P. 12(d), which states that if a party who files a Rule 12(c) motion presents to the court

"matters outside the pleadings" that are "not excluded by the court," the court must treat the motion as a motion for summary judgment under Fed. R. Civ. P. 56, and must give all parties "a reasonable opportunity to present all material that is pertinent to the motion." Fed. R. Civ. P. 56(d). Because the plaintiff believes the court should treat the defendant's motion as a motion for summary judgment, he argues that the defendant has not complied with this court's local rules governing summary judgment.

The plaintiff is right about the law, but he is incorrect that the court should apply that law to convert the motion for judgment on the pleadings into a motion for summary judgment. The defendant did not attach any extrinsic documents to the motion for judgment on the pleadings, nor did he ask the court to consider any. The *plaintiff* filed a number of attachments to his response, but those attachments are not appropriate for a motion for judgment on the pleadings, and the court has not reviewed them and does not consider them in its decision. In his reply, the defendant asks that if the court is going to consider extrinsic evidence, the court allow him to file a motion for summary judgment, so that he can comply with all of the rules and submit evidence. There is no need for the court to do that.

As the court explains below, it has concluded, based solely on the facts he alleges within the four corners of his complaint, that the plaintiff cannot prevail as a matter of law. This is true even if the court accepts every one of the plaintiff's factual allegations as true. Given that, there is no basis for the court to accept factual evidence through the summary judgment process. The

defendant's motion for judgment on the pleadings was timely filed, and was appropriately filed as a Rule 12(c) motion.

B.   *Rule 12(c) Standard*

Under Rule 12(c), a motion for judgment on the pleadings is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). Adams v. City of Indianapolis, 742 F.3d 720, 728-29 (7th Cir. 2014). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.' . . . Factual allegations are accepted as true at the pleading stage, but 'allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion.'" Id. at 729 (citations omitted).

As the name "motion for judgment *on the pleadings*" implies, "Rule 12(c) permits a judgment based on the pleadings alone." Northern Indiana Gun & Outdoors Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998) (citations omitted). "The pleadings include the complaint, the answer, and any written instruments attached as exhibits." Id. (citing, e.g., Fed. R. Civ. P. 10(c)). In considering a motion for judgment on the pleadings, then, this court may consider only the plaintiff's complaint, the defendant's answer and any documents either party attached to those to pleadings.

C.   *Section 1983 and First Amendment Standards*

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or

4

persons acting under color of state law. Buchanan-Moore v. C'nty of Milwaukee, 570 F.3d 824, 827 (7th Cir. 1009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)).

Under the First Amendment, prisoners have a right to be free from interference with their "legal" mail. See Wolff v. McDonnell, 418 U.S. 539, 577 (1974). Prison officials may inspect, but may not read, certain types of legal mail. Id. For example, correspondence between an inmate and an attorney is confidential. Id. Thus, prison officials may not read the contents of legal mail, and they must open such correspondence in the presence of the inmate. Id.

Inspection of personal mail, on the other hand, is a legitimate prison practice that is justified by the important governmental interest in prison security. Gaines v. Lane, 790 F.2d 1299, 1304 (7th Cir. 1986). Prison officials can read non-privileged mail, on a "spot check" basis, in order to detect possible escape plans or other threats to jail security. Id. (citing Smith v. Shimp, 562 F.2d 423 (7th Cir. 1977)). However, interference with an inmate's personal mail, beyond that of inspection for contraband, must be reasonably related to legitimate prison interests in security and order. See Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).

The Seventh Circuit has held that when prison staff members permanently withhold items of personal mail, and intentionally refuse to deliver them, the inmate's First Amendment rights are implicated. Sizemore v. Williford, 829 F.2d 608, 610 (7th Cir. 1987). On the other hand, "merely

5

alleging an isolated delay or some other relatively short-term, non content-based disruption in the delivery of inmate reading materials will not support, even as against a motion to dismiss, a cause of action grounded upon the First Amendment." Id. Thus, courts look to whether the plaintiff alleges "a continuing pattern or repeated occurrences" of the alleged interference with mail in order to determine whether there has been a First Amendment violation. Zimmerman v. Tribble, 226 F.3d 568, 572 (7th Cir. 2000) (citing Sizemore, 829 F.2d at 609)).

D. *Analysis*

The complaint alleges the following with regard to the defendant:

> On March 22, 2016, Sgt. Gutho was working second shift where the inmate, Ronald E. Richards, is housed on Unit 12. At approximately 2:45 p.m. on March 22, 2016, while the plaintiff was in the shower Sgt. Gutho was sorting mail. It's apparent when Sgt. Gutho ran accross [sic] a letter addressed to the plaintiff, he not only cut the tape that secures the contents in the envelope, but he read the letter. Sgt. Gutho then proceeded to take the letter outside to the court yard where several inmates were sitting around & a volley ball game was going on. Sgt. Gutho then took it upon himself to tell several inmates in the court yard exactly what he read in the plaintiff's letter. Sgt. Gutho then went directly to the plaintiff's room where he performed a room search, & left the letter with several other letters that were left on the plaintiff's bunk from the room search. The plaintiff believes Sgt. Gutho was trying to conceal the letter at that point. Possibly covering up what he had done. All this took place without the plaintiff even knowing he had gotten a letter that day.

Dkt. No. 1 at 3-5.

Accepting these allegations as true, which the court must for the purposes of ruling on a motion for judgment on the pleadings, the allegations

6

show that on a single occasion, the defendant (a) opened a piece of the plaintiff's mail, (b) read the contents, (c) told other inmates what he'd read and (d) delivered the mail to the plaintiff. The parties agree that the letter the defendant opened was a personal, non-privileged piece of mail. See Dkt. No. 22 at 2; Dkt. No. 23 at 5. All of this appears to have happened in the course of a single afternoon.

As a matter of law, the defendant did not violate the plaintiff's First Amendment rights simply by opening and reading the plaintiff's letter on March 22, 2016. Prison officials may read non-privileged mail, on a "spot check" basis, in order to detect possible escape plans or other threats to jail security. Gaines v. Lane, 790 F.2d at 1304 (citing Shimp, 562 F.2d 423 (7th Cir. 1977)).

It is true that prison staff must have a legitimate penological interest in opening a prisoner's personal mail. See Thornburgh, 490 U.S. at 413-14. The parties dispute whether the defendant had such a legitimate penological reason for opening the plaintiff's letter that day. The defendant hints that he did so (despite the mail room already having opened and inspected the letter) because "unit staff is in a better position based on their knowledge of the inmate population to monitor mail to make sure it does not otherwise present a security risk to the prison." Dkt. No. 22 at 7. The plaintiff responds that because mailroom staff already had opened and inspected the letter, the defendant had no justification for opening it, and certainly not for "reading the Plaintiff's mail word for word, and then disclosing what he read with other inmates." Dkt. No. 23 at 6.

Even though that dispute exists, the plaintiff cannot prevail as a matter of law. The plaintiff has not alleged that the defendant permanently withheld his mail. He has not alleged that the defendant refused to give him his mail. It is not even clear that he alleges the defendant delayed the plaintiff's receipt of his mail; it appears that the defendant opened, read and shared with others the letter all while the plaintiff was in the shower, and that the plaintiff found the mail on his bunk when he returned to his cell. Even accepting every one of the plaintiff's factual assertions as true, he has alleged only an "isolated delay," a non-content based disruption in delivery, without alleging a repeated pattern of occurrences. Under <u>Sizemore</u> and <u>Zimmerman</u>, this is not enough.

In reaching this conclusion, the court is not condoning prison staff opening, reading and sharing inmate mail for entertainment, or out of curiosity. But on the facts the plaintiff has alleged, and under the prevailing law, the plaintiff has not stated a claim.

III.   Conclusion

The court **ORDERS** that the defendant's motion for judgment on the pleadings is **GRANTED**. Dkt. No. 21.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. <u>See</u> Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. <u>See</u> Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable amount of time, generally no more than one year after entry of judgment. The court cannot extend this deadline. <u>See</u> Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 2nd day of February, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**